**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

**TOMAZINA JOHNSON, d/b/a
ZING ZING'S WINGS & MORE, LLC,**

                              **Plaintiff,**

**v.**                                    **Case 2:20-cv-02912-cgc**

**STATE FARM FIRE & CASUALTY
COMPANY,**

                              **Defendant.**

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Defendant State Farm Fire & Casualty Company's ("State Farm") Motion for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entry (D.E. #27, #28)).   The parties jointly consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 United States Code Section 636(c) and Rule 73 of the Federal Rules of Civil Procedure.   (D.E. #9).   For the reasons set forth herein, Defendant's Motion for Summary Judgment is hereby GRANTED.

## I.        Introduction

This case was initially filed on October 27, 2020 in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis ("Circuit Court").   (D.E. #1-2).   Plaintiff's Circuit Court Complaint alleged two claims: breach of contract and bad-faith refusal to pay an insurance claim pursuant to Tennessee Code Annotated Section 56-7-105.   (*Id*.)   On December 18, 2020, State Farm removed the case to this Court pursuant to 28 United States Code Sections 1332 and 1446.

(D.E. #1).

On February 28, 2022, State Farm filed the instant Motion for Summary Judgment.   State Farm argues that Plaintiff's claim for breach of contract fails as a matter of law because the Policy does not provide coverage regardless of which version of the evidence a trier of fact would choose to accredit.   Specifically, the Policy does not provide coverage either if the property was sold to third parties or if the property was entrusted to third parties and removed or stolen by them.   State Farm further argues that, because the Policy does not provide coverage for the claimed loss, Plaintiff's statutory claim for bad faith also fails as a matter of law.

On March 28, 2022, Plaintiff filed her Response to State Farm's Motion for Summary Judgment.   (D.E. # 33).   As to her breach-of-contract claim, Plaintiff argues that the Policy provides coverage for accidental physical loss of business personal property and that she has met her initial burden of establishing that an accidental, direct loss during the Policy period.   Plaintiff further argues that the limitations and exclusions upon which State Farm relies do not apply to Plaintiff's loss because she has ample evidence that a theft of property occurred and because State Farm does not know how the property was taken or stolen.   Finally, Plaintiff asserts that she has met her burden to plead a prima facie case of statutory bad-faith and that the question of whether she prevails on that claim is one for the trier of fact to determine.

On April 11, 2022, State Farm filed its Reply to Plaintiff's Response to its Motion for Summary Judgment.   (D.E. #37).   Therein, State Farm continues to assert that, regardless of which version of events a trier of fact could choose to accredit, there is no coverage under the Policy as a matter of law in either circumstance.

2

## II.    Proposed Findings of Fact

### a.  Insurance Policy

It is undisputed that, at all times applicable, a businessowner's insurance policy insured by State Farm, Policy Number 92-CX-X772-1 (the "Policy"), was in full force and effect insuring Plaintiff's restaurant business, Zing Zing's Wings & More, LLC ("Zing Zing's").   (*See* D.E. #28-7, #33-8).[1]   The Policy provides that State Farm insures for the "accidental direct physical loss to Covered Property," including those losses set forth in the specific extensions contained therein, unless the loss is excluded in "**Section I – EXCLUSIONS**" or limited in the "**Property Subject to Limitations**" provisions.   (SFM-Johnson Claim File 000457, filed at D.E. #28-7 at PageID 214 D.E. #33-8 at PageID 360).

### i.    Extensions

Policy Endorsement CMP-4710 ("Employee Dishonesty Extension") sets forth the following Extension of Coverage under **SECTION I – EXTENSIONS OF COVERAGE**:

**Employee Dishonesty**

1.  We will pay for direct physical loss to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your "employees" acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

    a.  Cause you to sustain loss; and

    b.  Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other "employee" benefits earned in the normal course of employment) for:

---

1  The Policy copies provided by Plaintiff and State Farm as exhibits are in a different order and, thus, paginated differently by the Court's Electronic Filing System PageID numbers; however, the pages also contain Bates stamps, formatted as SFM-Johnson Claim File _____.   The Court has relied upon those to compare the respective pages of each exhibit.

**(1)** Any "employee"; or

**(2)** Any other person or organization intended by that "employee" to receive that benefit.

. . .

**13.** With respect to this Coverage[,] "employee" means:

. . .

**b.** Any "manager," director, officer or trustee, whether compensated or not, except while performing acts outside the scope of their normal duties.

(SFM-Johnson Claim File 000445-46, filed at D.E. #28-7 at PageID 202-03 & D.E. #33-8 at PageID 421-422).

### ii.   *Limitations*

Under **SECTION   I— Property, Property Subject to Limitations**, the Policy states as follows:

1. We will not pay for loss to:

. . .

**c.** Property that is missing, where the only evidence of the loss is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

(SFM-Johnson Claim File 000457, filed at D.E. #28-7 at PageID 214 & D.E. #33-8 at PageID 360) (hereinafter the "Missing Property Limitation").

### iii.   *Exclusions*

Under **SECTION I — EXCLUSIONS**, the Policy states that State Farm does not insure "under any coverage for loss whether consisting of, or directly and immediately caused by, one or more of the following" exclusions.   (D.E. #28-7 at PageID 216; D.E. #33-8 at PageID 362).   With

respect to exclusions of coverage, the Policy also contains two endorsements—CMP-4561.1 and

CMP-4710—that are relevant to the instant motion and modify coverage under the Policy.   (D.E.

#28-7 at PageID 193; D.E. #33-8 at PageID 421-22).

The exclusion set forth in subsection 2(f) of Policy Endorsement CMP-4561.1

("Dishonesty Exclusion") states as follows:[2]

**f.   Dishonesty**

**(1)**   Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, "members," officers, "managers," employees, directors, trustees, or authorized representatives, whether acting alone or in collusion with each other or with any other party; or

**(2)**   Theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion applies whether or not an act occurs during your normal hours of operation.

This exclusion does not apply to acts of destruction by your employees; but theft by your employees is not covered.

With respect to accounts receivable and "valuable papers and records," this exclusion does not apply to carriers for hire.

(SFM-Johnson Claim File 000436, filed at D.E. #28-7 at PageID 193 & D.E. #33-8 at PageID

412).

The exclusion set forth in subsection 2(g) of the Policy ("False Pretenses Exclusion") states

as follows:

---

[2]   The prior version of the dishonesty exclusion is also contained in the Policy copies filed with the Court (*see* SFM-Johnson Claim File 000460, filed at D.E. #28-7 at PageID 217 & D.E. #33-8 at PageID 363); however, the parties agree that the Dishonesty Exclusion contained in Policy Endorsement CMP-4561.1 was in effect at all times relevant to this case.

**g.  False Pretense**

Voluntary parting with any property by you or anyone else to whom you have
entrusted the property if induced to do so by any fraudulent scheme, trick, device or
false pretense.

(SFM-Johnson Claim File 000460, filed at D.E. #28-7 at PageID 217 & D.E. #33-8 at PageID 363).

### d.  Evidence of Events Relevant to Plaintiff's Claims

Plaintiff sought to go into the restaurant business and did so by opening Zing Zing's.   (Pl.'s
Dep., D.E. #28-1 at 23:19-25).   Its grand opening took place in February of 2019.   (Pl.'s Dep.,
D.E. #28-1 at 43:11-18); however, while Plaintiff was operating the restaurant, it was operating at
a loss (Pl.'s Dep., D.E. #28-1, at 56:8-14).   Because the incoming cash flow was insufficient to
pay her bills, Plaintiff had to invest more money into the business herself.   (Pl.s' Dep., D.E. #28-
1, at 61:8-12).

Plaintiff testified that an acquaintance, who was aware that Plaintiff had become unwell,
suggested a "help-meet" with attorney Ursula Woods Jones ("Woods").   (Pl.'s Dep., D.E. #28-1,
at 64:1-65:24, 67:1-8, 200:18-23; Woods Dep., D.E. #28-4, at 4:14-22).   Plaintiff testified that
she met with Woods seeking assistance on how to manage Zing Zing's while unwell.   (Pl.'s Dep.,
D.E. #28-1, at 64:1-65:24, 67:1-8, 200:18-23; Woods Dep., D.E. #28-4, at 4:14-22).   Plaintiff
testified that Woods recommended to Plaintiff that two individuals—Curtis Braden ("Braden")[3]
and Rayford Burns ("Burns")—take over Zing Zing's because they had their own restaurants and
had experience in the wings business.   (Pl.'s Dep., D.E. #28-1, at 68:24-69:7).

Woods' recollection differs in several respects.   Woods testified that Plaintiff expressed

---

[3]  Braden is also referred to in the record as "Curtis Brazen."   (*See* Pl.'s EOU, D.E. #28-3, at 59:20).

6

interest in filing for bankruptcy to reduce the financial burden of Zing Zing's while she was ill but that she advised that Plaintiff did not qualify.  (Woods Dep.. D.E. #33-6, at 20:13-21:15).   Thus, Woods testified that she recommended that Plaintiff "sell the business" and "see if someone can sublet" so she could relieve herself of the financial obligations.  (Woods Dep., D.E. #33-6, at 21:16-20).   To that end, Woods testified that she recommended Braden, who is a commercial realtor, to "help effectuate that."  (Woods Dep., D.E. #33-6, at 21:20-23).   Woods testified that she contacted Braden about "taking over" Zing Zing's because Plaintiff was "losing the restaurant and wanted out."  (Woods Dep. at 23:18-24:5).   Woods testified that she recalls that Braden and Plaintiff met but that she does not know Burns and did not introduce Plaintiff to him.  (Woods Dep., D.E. #33-6, at 13:5-13).

While the Policy remained in effect, Plaintiff testified that she "entrusted" her "business property and business" to Braden and Burns, provided them keys to the business, allowed them to temporarily operate her restaurant, allowed them to use her property and equipment, allowed them to sell food that she had already purchased, and allowed them to use the services of her employees for at least some period of time.  (Pl.'s Dep., D.E. #28-1, at 92:18-93:7; 94:7-9).   Plaintiff testified that, while Braden and Burns were doing so, she would continue to pay her employees' wages, the utilities, and all other bills related to the business but Braden and Burns would pay the rent and keep the profits.  (Pl.'s Dep., D.E. #28-1, at 98:7-23).   During this arrangement, Plaintiff did not characterize Braden and Burns as her employees.  (Pl.'s Dep., D.E. #28-1, at 160:5-7).

Plaintiff testified that, after entrusting Zing Zing's to Braden and Burns, she was contacted by the landlord of Zing Zing's who told her that the business was shut down.  (Pl.'s Dep, D.E. #28-1, at 94:21-95:7; 96:17-22; 109:13-16, 116:14-117:18).   After receiving this phone call,

Plaintiff went to Zing Zing's and encountered two neighbors of the business who told her that the individuals she had allowed to operate the restaurant had removed everything out of the restaurant through the back door.   (Pl.'s Dep., D.E. #28-1, at 124:17-125:2, 139:9-140:4; 142:23-143:9). Plaintiff reported to State Farm that Braden and Burns stole all of her property from Zing Zing's. (Pl.'s Dep., D.E. #28-1, at 93:8-17; Pl.'s EOU, D.E. #28-3, at 55:24-56:3; 59:16-60:1).

Braden's version of events is substantially different.   He testified that Plaintiff transferred Zing Zing's and its equipment and property to Burns by way of Bill of Sale.   (Braden Dep., D.E. #28-5, at 14:23-15:10, 34:12-35:23; Braden Aff., D.E. #28-6, at ¶¶ 1-9 & Exh. 1).   Braden testified that he observed Plaintiff initial and sign the Bill of Sale and that he notarized it.   (*Id.*) Plaintiff testified at one point that it "looks like" her signature and initials are on the Bill of Sale but that Braden did not give her that document at their meeting and that she did not sign it; however, at another point, she testified that she was not disputing whether she signed it herself. (Pl.'s Dep., D.E. #28-1, at 82:7-84:13, 90:7-18).   Plaintiff continued to testify that she has "no idea" why her initials and signature were on the Bill of Sale and contends that it is a fraudulent document.   (Pl.'s Dep., D.E. #28-1, at 82:16-18, 90:7-14).   Plaintiff testified that Braden and Burns have her property and need to return it or pay her for it.   (PL.'s Dep., D.E. #28-1, at 153:4-10).

Ultimately, State Farm denied Plaintiff's claim under the Policy.   (Kelly Dep., D.E. #28-2, at 73:6-74:6; Oct. 22, 2020 Letter ("Denial Letter"), D.E. #28-8).   The Denial Letter sets forth, in pertinent part, as follows:

> Zing Zing's Wings & More LLC business personal property was removed from the insured location without the insured's knowledge during a period of time when she had entrusted the operation of her business, including the care of the property

claimed, to third party individuals. The property is missing and there is no physical evidence to show what happened to the property. Further, there is no contract in place between the insured and the third party individuals to whom the property was entrusted. The third party individuals do not meet . . . the definition of "employee" under endorsement CMP-4710 Employee Dishonesty.

(Denial Letter, D.E. #28-8, at PageID 251).

Plaintiff takes issue with many aspects of State Farm's handling of the claims process. First, Plaintiff has relied upon the deposition of Kevin Kelly as evidence of the errors that she believes State Farm made in considering her claim.[4] (*See* D.E. #33-4). Kelly initially testified about the nature of the Policy. He describes the policy as being one of "all-risk of accidental physical loss unless excluded" as opposed to a "named-perils policy." (Kelly Dep., D.E. #33-4 at 41:18-42:8). Kelly testified that there is no exclusion that he is aware of in the Policy for a claim to be denied if items are stolen out of the insured location when a door is not locked. (Kelly Dep., D.E. #33-4 at 36:9-16).

As to the analysis of Plaintiff's claim specifically, Kelly testified that State Farm did not perform an on-site inspection relating to Plaintiff's claim. (Kelly Dep., D.E. #33-4 at 31:24-32:4). Kelly testified that, generally, the only physical evidence of theft or burglary would be signs of forcible entry. (Kelly Dep., D.E. #33-4 at 37:7-14). Kelly admits, though, that a theft can occur without signs of forced entry. (Kelly Dep., D.E. #33-4 at 42:20-23). Kelly testified that he did not see any notes in the claim file that indicated that State Farm had asked Plaintiff to "investigate the loss location to see if she could determine if there was any evidence of forcible entry." (Kelly

---

4   Kelly testified as a corporate representative of State Farm. The excerpts from Kelly's deposition do not set forth his job title or specific role with State Farm, but he does testify that he has over twenty years of experience in the insurance industry and that nine claims specialists report to him. (Kelly Dep., D.E. # 33-4, at 21:9-10, 37:7-9).

Dep., D.E. #33-4 at 67:1-68:2).  Kelly testified that he does not know who stole or took the personal property from Zing Zing's and that the claims file "[m]ost likely" would have included that information if anyone at State Farm had "verifiable evidence of who took the property." (Kelly Dep., D.E. #33-4 at 47:19-48:18).  Kelly testified that it is State Farm's position that it lacks sufficient information or knowledge to determine if a theft occurred.   (Kelly Dep., D.E. #33-4 at 63:18-64:5).  Defendant disputes Kelly's testimony by relying upon the Bill of Sale as discussed, *supra*, which he states shows that Plaintiff sold the property to Burns.  (Braden Dep., D.E. #28-5, at 14:23-15:10, 34:12-35:23; Braden Aff., D.E. #28-6, at ¶¶ 1-9 & Exh. 1).

Plaintiff has also brought forth certain other evidence that she asserts is relevant to the instant motion.  First, Plaintiff has proffered an Incident Report that she filed with the Memphis Police Department ("MPD") on May 11, 2019 in conjunction with the loss. (*See* D.E. #33-11). The MPD Incident Report identifies Plaintiff as the complainant and states in its narrative that she reported that she arrived at Zing Zing's on May 11, 2019 and "observed the business empty." (MPD Incident Report, D.E. #33-11, at PageID 443, 445).   Next, Plaintiff provided an itemized list of property related to her claim that totals $20,052.48.   (*See* D.E. #33-13).

Finally, Plaintiff relies upon the deposition of Chris Heinz ("Heinz")[5] who testified that she paid rent at the loss location for May 2019.  (Heinz Dep., D.E. #33-4 at 10:18-25; *see also* D.E. #33-10).[6]  Heinz further testified that he was not aware that anyone other than Plaintiff "were

---

5  State Farm refers to Heinz as a representative of the property manager where Zing Zing's was located. The excerpts of Heinz's deposition do not set forth his job title or specific role, although he does testify that he is the person who was involved in collecting rent from Plaintiff.   (Heinz Dep., D.E. #33-9 at 10:10-25).

6  In its Response to Plaintiff's Additional Statement of Undisputed Material Facts, State Farm states that it is not in a position to verify or authenticate the check that Plaintiff filed as Exhibit G.

representing themselves as Zing Zing's Wings" and that he does not recall ever speaking with Burns or Branden.   (Heinz Dep., D.E. #33-9, at 11:19-22, 12:11-16).

### III.   Proposed Analysis & Conclusions of Law

#### a.   Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c).   Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party.   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   *Celotex*, 477 U.S. at 322.   The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case.   *Id.* at 325.   This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party.

10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### b.   Law Governing the Policy

The parties agree that Tennessee state law governs the insurance-coverage dispute at issue in this case. It is well-settled that "[i]nsurance policies are contracts and, thus, subject to the same rules of construction that are used to interpret other types of contracts." *Spears v. Tenn. Farmers Mut. Ins. Co.*, 300 S.W.3d 671, 678 (Tenn. Ct. App. 2009) (citations omitted). Thus, "the respective rights of an insured and an insurance company are governed by their contract of insurance." *Id*. "As with any other contract, courts must give effect to the parties' intentions as reflected in their written contract of insurance." *Id*. In doing so, the policy should be construed as a whole in a reasonable and logical manner, giving the policy's terms, as written, their natural and ordinary meaning." *Id*.

Under Tennessee law, "'an all-risk policy automatically covers any loss unless the policy contains a provision expressly excluding the loss from coverage.'" *Cincinnati Ins. Co. v. Banks*, 610 Fed. App'x 453, 457 (6th Cir. 2015) (quoting *HCA, Inc. v. Am. Prot. Ins. Co.*, 174 S.W.3d

184, 187 (Tenn. Ct. App. 2005)).   "Such a policy provides coverage 'in the absence of fraud or other intentional misconduct of the insured unless the policy contains a provision expressly excluding the loss from coverage."   *Id*.   A claimant under an insurance policy has the initial burden of proving that she comes within the terms of the policy.   *Id*. (citations omitted).   The insurer then bears the burden to prove that one of the policy exclusions applies and prevents recovery.   *Id*.   Moreover, "'exceptions, exclusions and limitations in insurance policies must be construed against the insurance company and in favor of the insured.'"   *Id*. (quoting *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991)).

"Questions relating to the interpretation of written contracts involve legal rather than factual issues."   *Spears v. Tenn. Farmers Mut. Ins. Co.*, 300 S.W.3d 671, 678 (Tenn. Ct. App. 2009) (citations omitted).   "A court's initial task in construing a contract is to determine whether the language of the contract is ambiguous."   *Id*. (citation omitted).   "Summary judgment is appropriate in contract cases where the terms of the contract are not ambiguous making the issue a pure question of law."   *Id*.   "If the terms of the contract are ambiguous, then the court applies established rules of construction to determine the parties' intent."   *Id*.   While language that is susceptible to more than one reasonable interpretation is ambiguous and should be construed in favor of the insured, courts should not favor either party of the policy's language is unambiguous and free from doubt and should enforce unambiguous policy terms as written.   *Id*.   Only if ambiguity remains after the court applies the pertinent rules of construct does the legal meaning of the contract become a question of fact such that summary judgment is not proper.   *Id*.

### c.   *Breach of Contract Claim*

Plaintiff's first claim alleges breach of contract by State Farm.   A claim for breach of

contract requires the plaintiff to prove the existence of an enforceable contract, non-performance amounting to a breach of that contract, and damages as a result of that breach. *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006). There is no dispute that State Farm issued the Policy and that it was in effect at all times relevant to Plaintiff's claim. Thus, the legal question as issue here is whether State Farm failed to perform its obligations under the Policy by denying Plaintiff's claim for coverage.

In addition to the legal issue, there are factual disputes presented by the evidence in this case. However, Defendants contend that the evidence requires the conclusion that either Plaintiff sold the property to Braden and Burns or that she entrusted it to them. Defendants argue that, regardless of which version of events the trier of fact would choose to accredit, the Policy does not provide coverage for either loss. Thus, Defendants argue that summary judgment is appropriate.

Plaintiff contends that the existence of factual disputes in her case require it to be presented to a trier of fact. Specifically, Plaintiff argues that, if the trier of fact were to determine that Braden and Burns stole her property, it could also conclude that they should be considered her "trustees" and, thus, the Policy would afford coverage under the Employee Dishonesty Extension. In the alternative, Plaintiff argues that the trier of fact does not have to agree with her personal belief that that Braden and Burns stole her property for the Policy to provide coverage for two reasons. First, Plaintiff argues that State Farm did not properly inspect or instruct Plaintiff to inspect the loss location for evidence of forcible entry such that it cannot rely upon the Missing Property Limitation to deny coverage. Second, Plaintiff argues that State Farm cannot rely upon either the False Pretenses Exclusion or the Dishonesty Exclusion because it does not know who stole or took Plaintiff's property.

14

Beginning with the broad extension of coverage, the Policy states that it insures for the "accidental direct physical loss to Covered Property." If the trier of fact were to accredit Defendant's evidence that Plaintiff sold Zing Zing's to Braden and Burns, Plaintiff would be unable to meet her burden that the loss of property was accidental. Thus, for there to even arguably be any coverage under the Policy, the trier of fact would have to accredit some version of events whereby the loss was "accidental" and was not limited or excluded by the Policy's express provisions.

First, Plaintiff argues that the trier of fact could determine that Braden and Burns removed the property while acting as her "trustees," [7] which falls under the Policy's definition of "employee," such that the Employee Dishonesty Extension applies. Even assuming, *arguendo*, that Braden and Burns were acting as her "trustees," the Employee Dishonesty Extension does not extend coverage when a trustee is "performing acts outside the scope of their normal duties." A theft, necessarily, is an act outside the scope of the normal duties of someone to whom a property has been entrusted. Thus, the Employee Dishonesty Extension does not specifically extend coverage here. This lack of extension, in and of itself, is not fatal, as an all-risk policy need not explicitly detail all circumstances under which it provides coverage. What is determinative, however, is that the Dishonesty Exception contained in the Policy does specifically exclude coverage for a "theft by any person to whom you entrust the property for any purpose . . . ." and

---

[7]  State Farm argues in its Reply that "Plaintiff points to nothing in the record that would indicate a trust relationship, *i.e.*, no trust document, no appointment of a trustee, and no directions or requirements of the trustee." While this is true, the Court need not reach the question of whether Braden and Burns can be deemed trustees under Tennessee law because, for the reasons set forth, *infra*, the Policy does not provide coverage even if Braden and Burns were deemed to be "trustees."

states that "theft by your employees is not covered."[8]   Thus, if the trier of fact were to accredit the evidence that Braden and Burns removed the property while it was entrusted to them, there is no coverage for such a loss under the Policy.

Finally, Plaintiff argues that the trier of fact could determine that it is not certain that Braden and Burns removed or stole the property and leave open the question of whether other identified individuals may be to blame for the theft.   However, at the summary judgment stage, the evidence must show that a genuine dispute of material fact exists to proceed to trial.   The evidence before the Court does not show that any dispute exists as to who removed the property. In sum, the evidence shows as follows.   Plaintiff testified that two neighbors of the business told her that the individuals she had allowed to operate the restaurant had removed everything out of the restaurant through the back door.   The record reflects that those individuals are Braden and Burns.   Thereafter, Plaintiff informed State Farm that Braden and Burns stole the property, and she personally continues to believe that Braden and Burns are responsible.[9]

---

8 Plaintiff argues that the Employee Dishonesty Extension is inconsistent with the Dishonesty Exception and the inconsistency must be resolved in favor of the insured.   There is a degree of inconsistency between the two provisions, as the Employee Dishonesty Extension extends coverage to "dishonest acts" committed by the policyholder's "employees," which includes "trustees," but the Dishonesty Exclusion then removes coverage for "dishonest or criminal acts by . . . employees . . . [or] trustees."   This inconsistency does not dictate the result here, however, for three reasons.   First, as already stated, the Employee Dishonesty Exception does not apply here due to theft being an act outside the scope of a trustee's normal duties.   As it does not apply, it is not inconsistent with the application of the Dishonesty Exclusion.   Second, while the two provisions arguably have inconsistencies as to coverage for "dishonest acts" by employees or trustees in general, the Dishonesty Exclusion is clear that there is no coverage under the specific situation of "[t]heft by *any person to whom you entrust the property for any purpose*. . . ."   It also explicitly states that "theft by your employees is not covered."   Thus, regardless of any other inconsistencies, these express provisions are unambiguous and remove coverage for the specific circumstance leading to the loss claimed here.

9   Even if this case could survive summary judgment to be presented to the trier of fact, and even if the trier of fact were to find the evidence of who removed the property to be too weak to answer the question definitively, the Policy still would not provide coverage as a matter of law.   Specifically, the Missing

#### d.   Statutory Bad Faith Claim

Plaintiff's second claim alleges a statutory claim for bad faith refusal to pay pursuant to Tennessee Code Annotated Section 56-7-105.   To prevail on such a claim, the following elements must be met: (1) the policy of insurance must, by its terms, have become due and payable; (2) a formal demand for payment must have been made; (3) the insured must have waited sixty days after making his demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days); and, (4) the refusal to pay must not have been in good faith.   *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986 (citations omitted).

Here, the Court has determined that the Policy does not provide coverage for Plaintiff's claim as a matter of law.   Thus, Plaintiff's claim has never been "due and payable," and Plaintiff's statutory claim for bad faith refusal to pay fails as a matter of law.

---

Property Limitation states that State Farm does not cover losses of property that is "missing" in "instances where there is no physical evidence to show what happened to the property."

With respect to the Missing Property Limitation, Plaintiff argues that State Farm failed to inspect the loss location itself and failed to instruct Plaintiff to inspect the loss location to look for "physical evidence to show what happened to the property."   Plaintiff relies upon the deposition of Kevin Kelly, State Farm's Corporate Representative, who testified that the typical physical evidence of theft is evidence of forcible entry.   However, Plaintiff has not argued that State Farm has any contractual duty to inspect the loss location, to instruct the claimant to inspect the loss location, or to perform any other specific action to search for physical evidence of what happened to the property.   Absent such a contractual duty, the Missing Property Limitation applies regardless of whether State Farm inspected the location or instructed Plaintiff to do so.

Plaintiff also argues that she does have evidence of her loss in the form of photographs from the grand opening showing her property inside the restaurant, photographs of the property after the loss, and the MPD Incident Report detailing the missing property.   (*See* D.E. #33-17, #33-18).   The photographs do show that property is "missing" but cannot be said to show "what happened to the property" beyond the fact that it is missing.   The MPD Report also details that the property is "missing," but it does not include any physical evidence of "what happened to the property."   Thus, the Policy would not provide coverage as a matter of law even if presented to a trier of fact.

**IV.      Conclusion**

For the reasons set forth herein, Defendant's Motion for Summary Judgment is hereby GRANTED.

**IT IS SO ORDERED** this 23rd day of November, 2022.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

18